**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

FLEET CONNECT SOLUTIONS LLC,

      Plaintiff,

      v.

CALAMP CORP.,

      Defendant.

Civil Action No. 2:25-cv-00350

**JURY TRIAL DEMANDED**

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against CalAmp Corp. ("CalAmp" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|   | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1) | 6,549,583 | Optimum Phase Error Metric For OFDM Pilot Tone Tracking In Wireless LAN | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583 |
| 2) | 6,633,616 | OFDM Pilot Tone Tracking For Wireless LAN | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| 3) | 6,941,223 | Method And System For Dynamic Destination Routing | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6941223 |
| 4) | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 5) | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 6) | 7,450,955 | System And Method For Tracking Vehicle Maintenance Information | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7450955 |
| 7) | 7,741,968 | System And Method For Navigation Tracking Of Individuals In A Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |
| 8) | 8,862,184 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8862184 |

2.    Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.    Upon information and belief, Defendant is a corporation organized under the laws of the State of Delaware with its principal place of business located at 2200 Faraday Ave, Suite 220, Carlsbad, CA 92008.

5.    Upon information and belief, Defendant may be served through its registered agent for service, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808; or at its principal place of business, located at 2200 Faraday Ave, Suite 220, Carlsbad, CA 92008.

## JURISDICTION AND VENUE

6.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District from those regular and established places of business.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.     Defendant has also not contested the propriety of venue in this District in previous litigation.    *See, e.g.*, Answer to Complaint and Counterclaim, Dkt. No. 18 at ¶ 8, *In Sunset Licensing LLC v. CalAmp Corp.,* Case No. 4:20-cv-00267-ALM (E.D. Tex. July 24, 2020) ("Defendant does not contest the propriety of venue in this judicial district…").

10.     Defendant offers products and services, including through the use of Accused Products, and conducts business in this District.

11.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including:  (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; (iii) having an interest in, using or possessing real property in Texas and this District; (iv) and having and keeping personal property in Texas and in this District.

12.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

13.     On information and belief, Defendant owns, operates, manages, conducts business, and

directs and controls the operations and employees of facilities at several locations in Texas and in this District, including, but not limited to, facilities at the following addresses: 2400 N Glenville Dr., Suite 225B, Richardson, TX 75082.

14.     Defendant commits acts of infringement from this District, including, but not limited to, using, installing, testing of the Accused Products, selling and offering to sell the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

15.     Through at least its website, https://www.calamp.com/, Defendant instructs its customers on how to install and use the Accused Products.

## THE ACCUSED PRODUCTS

16.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17.     Defendant uses, causes to be used, sells, offers for sale, imports, provides, supplies, or distributes one or more fleet management tracking solutions, including, but not limited to, the **CalAmp Fleet Telematics Application/Software/Website, Fleet Management Application/Software/Website, FleetOutlook, CalAmp iOn Fleet and Asset Management Application/Software/Website, CalAmp K-12 Fleet Management Application/Software/Website, Trucking Telematics Application/Software/Website, Cargo Monitoring Application/Software/Website, Asset Tracking Application/Software/Website, ELD solutions including, ELD devices, including, for example, LMU-1300M, LMU-2630MB, LMU-2650MB, LMU-3040MB, LMU-3640MB, LMU-3641MB, LMU-3040LA, HMU-3640LB, TTU-2900, TTU-2830, ATU-1300, SC1204, SC1205V, SC1302, TTU-730, TTU-1230, TTU-2830 LTE Cat M1, TTU-2840XT, LMU4350LB, LMU3642MB, HMU3640LA, LMU3040LVB, LMU3030LVBL, LMU3035LVBL, LMU3030LABL, LMU3035LABL, LMU-3240L, LMU-5541, LMU3240LAW, LMU-2630MB 12-Wire Sealed, LMU-2630MB**

**LTE CAT M1 20-Pin, ATU-620, TTU-720, TTU-1220, SC-1004, SC-1205v, SC-1102, CalAmp Vision, SCU 120, LMU 5541, LMU 2650MB, LMU 3642MB, LMU3640MB, LMU2650MB, TAG09, TAG04, LMU3641MB, HMU 3640LB, HMU 3640LA, VLU11VMAB, VLU11VMA, VLU11VMAB/VLU11VMA, MDT-7P, MDT-8M, MDT-8W, SC iOn Tag, Bluetooth Tags, LMU-3640, LMU-4233, FleetOutlook, MobileFind, MobileInstall, MobileNAV, CalAmp K-12, CalAmp ELD-app,** and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

18.    On information and belief, Defendant, using the Accused Products, performs wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

19.    On information and belief, Defendant, using the Accused Products, performs singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

20.    Defendant, using the Accused Products, also tracks, analyzes, and reports vehicle maintenance needs and driver warnings associated with a vehicle, tracks or causes to be tracked vehicle locations, and allows for communication between a system administrator and a remote unit

to communicate, e.g., advisory notifications.

21.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,549,583**

22.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

23.    The USPTO duly issued U.S. Patent No. 6,549,583 (the "'583 patent") on April 15, 2003, after full and fair examination of Application No. 09/790,429, which was filed February 21, 2001.  The '583 patent is entitled "Optimum Phase Error Metric for OFDM Pilot Tone Tracking in Wireless LAN."

24.    Fleet Connect owns all substantial rights, interest, and title in and to the '583 patent, including the sole and exclusive right to prosecute this action and enforce the '583 patent against infringers and to collect damages for all relevant times.

25.    The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

26.    The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '583 patent.

28.     Defendant has directly infringed the claims of the '583 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

29.     For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent, as detailed in **Exhibit A** and **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,549,583).

30.     As just one example of infringement, as detailed in <u>Exhibit A</u> and <u>Exhibit B</u>, Defendant, using the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; and estimating an aggregate phase error of a subsequent OFDM data symbol relative to the pilot reference points using complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points; wherein the estimating step comprises performing a maximum likelihood-based estimation using the complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points.

31.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,633,616

32.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though

fully set forth in their entirety.

33.    The USPTO duly issued U.S. Patent No. 6,633,616 (the "'616 patent") on October 14, 2003, after full and fair examination of Application No. 09/935,081, which was filed August 21, 2001.  The '616 patent is entitled "OFDM Pilot Tone Tracking for Wireless LAN."

34.    Fleet Connect owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers and to collect damages for all relevant times.

35.    The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

36.    The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '616 patent.

38.    Defendant has directly infringed the claims of the '616 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

39.    For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent, as detailed in as **Exhibit C** and **Exhibit D**

(Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616).

40.    As just one example of infringement, as detailed in as Exhibit C and Exhibit D, Defendant, using the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; processing, in a parallel path to the determining step, the OFDM preamble waveform with a fast Fourier transform; determining a phase error estimate of a subsequent OFDM symbol relative to the pilot reference points; and processing, in the parallel path to the determining step, the subsequent OFDM symbol with the fast Fourier transform; wherein the determining the phase error estimate step is completed prior to the completion of the processing of the subsequent OFDM symbol with the fast Fourier transform in the parallel path.

41.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,941,223**

42.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

43.    The USPTO duly issued U.S. Patent No. 6,941,223 (the "'223 patent") on September 6, 2005, after full and fair examination by the USPTO of Application No. 10/339,663, which was filed on January 10, 2003.  *See* '223 patent at 1.  The '223 patent is entitled "Method And System For Dynamic Destination Routing."

44.    Fleet Connect owns all substantial rights, interest, and title in and to the '223 patent,

including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

45.     The claims of the '223 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting routing and navigation systems.

46.     The written description of the '223 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

47.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '223 patent.

48.     Defendant has directly infringed one or more claims of the '223 patent by manufacturing, selling, offering for sell, importing, using, providing, supplying, or distributing the Accused Products.

49.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 19 of the '223 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,941,223).

50.     For example, as detailed in Exhibit E, Defendant, through the use and provision of the Accused Products, performs a method for destination routing of a vehicle.  The method includes the acts of: determining, based on static information, an optimal route, receiving additional

information, determining, based on a comparison of real travel parameters of the vehicle with travel parameters associated with the optimal route, whether the optimal route remains optimal, and determining a new optimal route when the optimal route does not remain optimal, wherein the new optimal route is determined using the additional information, wherein the travel parameters include at least one of travel time and traveled distance.

51.    Fleet Connect is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 6,961,586

52.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

53.    The USPTO duly issued U.S. Patent No. 6,961,586 (the "'586 patent") on November 1, 2005, after full and fair examination of Application No. 09/955,543, which was filed on September 17, 2001.  *See* '586 patent at 1.  The '586 patent is entitled "Field Assessments Using Handheld Data Management Devices."

54.    Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

55.    The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

56.     The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57.     Defendant has directly infringed one or more claims of the '586 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

58.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586).

59.     For example, as detailed in <u>Exhibit F</u>, Defendant, through the use and provision of the Accused Products, performs a method of conducting a field assessment using a handheld data management device, comprising: providing a hand held data management device user performing as a field assessor access to an industry-specific field assessment program module for enabling the field assessor to execute at least one of the following field assessments: construction industry project analysis, HVAC system analysis; project management, equipment readiness, system and equipment troubleshooting, remote inventory tracking and ordering, conducting legal investigations in the field, and multi-users remote function coordination; executing said program module to conduct the field assessment; providing field-specific information required by said program module for said program module to render data in support of said field assessment; and retrieving data through said handheld data management device in support of said field assessment.

60.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '586 patent.

61.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,206,837

62.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

63.     The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151, which was filed November 4, 2002.  *See* '837 patent at 1.  The '837 patent is entitled "Intelligent Trip Status Notification."

64.     Fleet Connect owns all substantial rights, interest, and title in and to, the '837 patent including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

65.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '837 patent.

66.     The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for mobile vehicle-based communications systems utilizing short-range communication links.

67.    The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.    Defendant has directly infringed one or more claims of the '837 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

69.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837).

70.    For example, as detailed in Exhibit G, Defendant, through the use and provision of the Accused Products, performs a method comprising: (i) receiving a location of a mobile communications device that is in transit to a destination; (ii) estimating the time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on: (a) said location, and (b) at least one historical travel time statistic; and (iii) sending the time-of-arrival bounds to said mobile communications device.

71.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,450,955**

72.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though

fully set forth in their entirety.

73.    The USPTO duly issued the U.S. Patent No. 7,450,955 (the "'955 patent") on November 11, 2008, after full and fair examination by the USPTO of Application No. 11/524,858, which was filed on September 20, 2006.  *See* '955 patent at 1.  A Certificate of Correction was issued on September 24, 2013.  *See id.* at 19.  A second Certificate of Correction was issued on May 1, 2018.  *See id.* at 20.  The '955 patent is entitled "System And Method For Tracking Vehicle Maintenance Information."

74.    The claims of the '955 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for tracking vehicle maintenance information.

75.    The written description of the '955 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

76.    Fleet Connect owns all substantial rights, interest, and title in and to the '955 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

77.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '955 patent.

78.    Defendant has directly infringed one or more claims of the '955 patent by

manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products

79.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '955 patent, as detailed in **Exhibit H** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,450,955).

80.    For example, as detailed in Exhibit H, Defendant performs a method for tracking vehicle maintenance information by a system administrator.  The method includes identifying by the system administrator a vehicle associated with a vehicle identifier of a receiving mobile unit; determining a warning associated with the vehicle; generating baseband message data indicating the warning by constructing at least one data packet from a plurality of data fields, the data fields including a unique identifier of a transmitting mobile unit, and the vehicle identifier of the receiving mobile unit; upconverting the baseband message data to radio frequency for transmission to the receiving mobile unit; transmitting the upconverted baseband message data from the transmitting mobile unit to the receiving mobile unit, thereby indicating the warning; and receiving a confirmation of receipt from the receiving mobile unit including parsing the confirmation of receipt to confirm the warning was received.

81.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,741,968

82.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

83.     The USPTO duly issued U.S. Patent No. 7,741,968 (hereinafter, the "'968 patent") on June 22, 2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.  *See* '968 patent at 1.  The '968 patent is entitled "System And Method For Navigation Tracking Of Individuals In A Group."

84.     Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

85.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '968 patent.

86.     The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

87.     The written description of the '968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

88.     Defendant has directly infringed one or more claims of the '968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

89.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at

least claim 4 of the '968 patent, as detailed in **Exhibit I** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968).

90.    For example, as detailed in <u>Exhibit I</u>, Defendant, through the use and provision of the Accused Products, performs a method of keeping track of a group of individuals, said method comprising: receiving at a portable hand-held device current geographic location data pertaining to each of said individuals; displaying said received current geographic location data on said portable hand-held device; sending converging instructions to at least one of said individuals for allowing said individual to converge with said hand-held device; and generating ETAs pertaining to convergence between said one individual and said handheld device.

91.    Defendant also indirectly infringes by inducing others to directly infringe the '968 patent.  Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products.  Defendant takes active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 4 of the '968 patent.

92.    Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website.  Defendant performs these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement.  Defendant was aware that the normal and customary use of the Accused Products

by others would infringe the '968 patent.

93.    Defendant has also indirectly infringed by contributing to the infringement of the '968 patent.  Defendant has contributed to the direct infringement of the '968 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '968 patent, including, for example, claim 4 of the '968 patent.  The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use.

94.    Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

95.    Defendant's direct infringement of the '968 patent is willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

96.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 8,862,184**

97.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

98.    The USPTO duly issued the U.S. Patent No. 8,862,184 (the "'184 patent") on October 14, 2014, after full and fair examination of Application No. 13/925,692, which was filed on June 24, 2013.  *See* '184 patent at 1.  The '184 patent is entitled "System And Methods For Management

Of Mobile Field Assets Via Wireless Handheld Devices."

99.    The claims of the '184 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

100.    The written description of the '184 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

101.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '184 patent.

102.    Fleet Connect owns all substantial rights, interest, and title in and to the '184 patent, including the sole and exclusive right to prosecute this action and enforce the '184 patent against infringers and to collect damages for all relevant times.

103.    Defendant has directly infringed one or more claims of the '184 patent by manufacturing, selling, offering for sale, importing, using, providing, supplying, or distributing the Accused Products.

104.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '184 patent, as detailed in **Exhibit J** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,862,184).

105.    For example, as detailed in Exhibit J, Defendant, through the use and provision of the

Accused Products, performs a method, comprising downloading a field assessment program to a handheld device from a server geographically distant from the handheld device; executing the field assessment program on the handheld device, the field assessment program configured to enable assessment of a job; collecting data associated with the job in response to prompts from the field assessment program; obtaining information associated with a location of the job based at least part on determining the location of the job; rendering the collected data using the handheld device based at least in part on the obtained information; and providing the assessment of the job in response to the rendering.

106.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

107.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

108.    Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '968 patent; or, in the alternative,

an award of a reasonable ongoing royalty for future infringement of the '968 patent by such entities;

c.  Judgment that Defendant account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringement of the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 7, 2025</u>                    Respectfully submitted,

By:<u>*/s/ James F. McDonough, III*</u>

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854)*
Kenneth A. Matuszewski (IL 6324308)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Telephone: (708) 870-5803
Email: matt@rhmtrial.com
Email: kenneth@rhmtrial.com

Jonathan Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff* **FLEET CONNECT SOLUTIONS LLC**

*Admitted to the Eastern District of Texas

**List of Exhibits**

   A.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,549,583 (LTE)
   B.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,549,583 (WiFi, LTE)
   C.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616 (LTE)
   D.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616  (WiFi, LTE)
   E.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,941,223
   F.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586
   G.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837
   H.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,450,955
   I.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968
   J.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,862,184

**List of Supportive Links**

1. U.S. Patent No. 6,549,583, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583
2. U.S. Patent No. 6,633,616, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616
3. U.S. Patent No. 6,941,223, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6941223
4. U.S. Patent No. 6,961,586, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586
5. U.S. Patent No. 7,206,837, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837
6. U.S. Patent No. 7,450,955, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7450955
7. U.S. Patent No. 7,741,968, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968
8. U.S. Patent No. 8,862,184, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8862184